IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CHARLES KEVIN MILLER, SR., and )
SANDRA L. MILLER, his wife; and ERICA )
MILLER; )
                    Plaintiffs, )
 )
          vs )     Civil Action No. 05-733
 )
COUNTY OF ALLEGHENY, a Pennsylvania )
Municipality; THOMAS HORTON, )
individually and in his capacity as a Detective )
for the Allegheny District Attorney's Office; )
FRANCES LAQUATRA, individually and in )
her capacity as an investigator for the District )
Attorney's Office of Corrections; THOMAS )
LEICHT, individually and in his capacity as an )
Officer/Employee for the Allegheny County Jail;)
RONALD POFI, individually and in his capacity)
as an Officer/Employee for the Allegheny )
County Jail; RAMON C. RUSTON, individually)
and in his capacity as Warden of the Allegheny )
County Jail; DANIEL ONORATO, individually )
and in his capacity as Chief Executive Officer of)
Allegheny County, STEPHEN A. ZAPPALA, )
individually and in his capacity as District )
Attorney for Allegheny County, )
                    Defendants. )


OPINION  AND  ORDER


MITCHELL, Magistrate Judge:

          Presently before the Court is a motion to dismiss several counts of the plaintiff's

amended complaint submitted by defendants Stephen A. Zappala, Thomas Horton and Frances

Laquatra (the "moving defendants").  In their motion, the moving defendants seek the partial

dismissal of Count One of the amended complaint to the extent it is based upon defendant

Zappala's filing or initiating criminal charges, the partial dismissal of Count Three which arises

under 42 U.S.C. § 1985(3), and the dismissal of Counts Four, Seven and Twelve.  For reasons

discussed below, the partial motion to dismiss filed by defendants Zappala, Horton and Laquatra

(Docket No. 28) is granted.

In this unfortunate case of mistaken identity, plaintiffs Charles Kevin Miller, Sr.,

his wife, Sandra L. Miller, and his daughter, Erica Miller, have filed an amended civil rights

complaint against defendants Allegheny County, PA, its Chief Executive Daniel Onorato, its

District Attorney Stephen Zappala, Thomas Horton and Frances Laquatra, who are employees of

the District Attorney's Office, Ramon Ruston, the Warden of the Allegheny County Jail ("ACJ"),

and Thomas Leicht and Ronald Pofi, who are employees of ACJ.  This action arises from the

alleged illegal arrest and detention of plaintiff Charles Kevin Miller on February 18, 2004 which

occurred in the presence of his daughter, plaintiff Erica Miller.

Plaintiff Charles Kevin Miller ("C. Kevin Miller") was employed as a corrections

officer at ACJ from 2001 until 2004.  A nonparty to this suit, Charles Richard Miller ("C. Richard

Miller"), also was employed as a corrections officer at ACJ from 1994 until he was discharged in

2002 for fraternizing with female inmates.  According to the plaintiffs, C. Richard Miller is 14

years younger, 50 pounds heavier, and has significantly more hair than plaintiff C. Kevin Miller.

The record shows that in 2002, a grand jury investigated the smuggling of

contraband into ACJ.  When a witness reported sexual improprieties at ACJ, the grand jury began

investigating allegations of sexual assault there.  In the fall of 2002, defendant Pofi interviewed

nonparty C. Richard Miller, who admitted giving his home phone number to a female inmate on

his pod.  It appears that nine phone calls were made from ACJ to the home phone number of C.

Richard Miller.  As a result, a disciplinary hearing was scheduled by ACJ's Assistant Deputy

Warden for nonparty Miller for violating the administrative directive against fraternization.

On January 15, 2004, the grand jury concluded its investigation into whether

guards at ACJ were sexually assaulting inmates.  This investigation produced numerous leads

which were followed up by the District Attorney's Office.

On February 17, 2004, plaintiff C. Kevin Miller was charged with institutional

sexual assault for an incident which occurred in 2003.  The plaintiffs contend that on February 18,

2004, defendant Pofi informed Corrections Officer Holt that plaintiff C. Kevin Miller was to be

arrested later that day for sexual misconduct, and under questioning from Holt, defendant Pofi

maintained that C. Kevin Miller was responsible for the alleged sexual misconduct rather than

nonparty C. Richard Miller, who was discharged for such acts.

The plaintiffs allege that on February 18, 2004, defendants Horton, Leicht and

Laquatra arrived at C. Kevin Miller's home and placed him under arrest in the presence of his

daughter, plaintiff Erica Miller, at which time Mr. Miller was handcuffed, transported in a police

car to the police station, and handed a card setting forth his Miranda rights.  At the police station,

Mr. Miller voiced his innocence, and explained that he never worked on a floor with female

inmates at ACJ; he stated that the man they were looking for, C. Richard Miller, had been

discharged from ACJ for fraternizing with female inmates.

The plaintiffs aver that as a result of Mr. Miller's arrest, a spokesman for the

District Attorney's Office indicated that C. Kevin Miller had been charged with institutional

sexual assault, after which Mr. Miller was arraigned in the media spotlight, and bail was set at

$1,000.  Thereafter, defendants Leicht and Horton initiated a conversation with the presiding

magistrate, indicating they were unsure of the identification of their suspect.  The magistrate then

changed Mr. Miller's bond, and he was released on his own recognizance.  As Mr. Miller was

returning home, defendant Leicht contacted him and asked if he could return to the station to sign

a form releasing Allegheny County, ACJ and the District Attorney's Office from liability.

On February 19, 2004, the Pittsburgh Post Gazette and Pittsburgh Tribune-Review

published stories that C. Kevin Miller was one of the guards at ACJ charged with institutional

sexual assault.  On February 25, 2004, police issued a criminal complaint against nonparty C.

Richard Miller for institutional sexual assault in incidents occurring from July to September 2002.

The plaintiffs assert that on May 12, 2004, at the behest of defendant Horton, District Justice

Charles McLaughlin issued an order for the fingerprinting of plaintiff Miller, even though C.

Richard Miller had been charged for the same offense.  Plaintiff Miller is said to have suffered

emotional distress, damage to his reputation and financial loss due to his unfounded detention.

Based on the defendants' complained-of acts, the plaintiffs have filed a twelve-

count amended complaint.  In Count One, Mr. Miller asserts a claim against all the defendants for

violating his rights under 42 U.S.C. § 1983 by allowing, or being deliberately indifferent to such

unlawful police practices as illegal seizures and imprisonment, misidentification of criminal

suspects, and issuing erroneous warrants.  In Count Two, Mr. Miller asserts a claim against

defendants Ruston, Horton, Laquatra, Leicht and Pofi for arresting him without probable cause in

violation of § 1983.  In Count Three, Mr. Miller claims that all the individual defendants entered

into an agreement to arrest him without probable cause, deprive him of his liberty and equal

protection rights, and conspired amongst themselves to generate media attention for their acts in

violation of 42 U.S.C. §§ 1983 and 1985(3).  In Count Four, Mr. Miller contends that the

individual defendants violated 42 U.S.C. § 1986 by refusing or neglecting to aid in preventing the aforesaid conspiracy.  In Count Five, Mr. Miller claims that defendants Ruston, Horton, Laquatra, Leicht and Pofi are liable for false arrest and false imprisonment.  In Counts Six and Seven, Mr. Miller asserts that defendants Onorato, Ruston, Horton, Laquatra, Leicht and Pofi engaged in malicious prosecution (Count Six) and are liable for intentional infliction of emotional distress (Count Seven).  In Count Eight, Mr. Miller contends that defendants Ruston, Horton, Laquatra, Leicht and Pofi defamed him by issuing a warrant application for a serious criminal charge with reckless disregard for the truth or falsity of the statements contained therein.  In Count Nine, defendant Pofi is said to have slandered Mr. Miller by stating to Officer Holt that Miller was rightfully charged with sexual assault.  In Count Ten, Mr. Miller claims that defendants Onorato, Ruston, Horton, Laquatra, Leicht and Pofi engaged in a conspiracy to arrest him without probable cause and generate media attention for their acts.  In Count Eleven, plaintiff Sandra Miller asserts a claim for loss of consortium.  In Count Twelve, plaintiff Erica Miller contends that defendants Ruston, Horton, Laquatra, Leicht and Pofi are liable for intentional infliction of emotional distress for purposefully depriving her father of his liberty interests and making shocking accusations against him in her presence.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

In response to the amended complaint, defendants Zappala, Horton and Laquatra have moved to dismiss certain claims against them for failure to state a cognizable claim. Specifically, the moving defendants seek the partial dismissal of Count One of the amended complaint to the extent it is based upon defendant Zappala's filing or initiating criminal charges, the partial dismissal of Count Three which is said to arise under 42 U.S.C. § 1985(3), and the

dismissal of Counts Four, Seven and Twelve.[1]

In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant.  Estelle v. Gamble, 429 U.S. 97 (1976); Shaev v. Saper, 320 F.3d 373, 375 (3d Cir. 2003).

In Mr. Miller's § 1983 claim against the defendants in Count One, he alleges that by acquiescence or deliberate indifference, the defendants have allowed several unlawful police customs or practices to exist, including subjecting citizens to illegal seizures and imprisonment, engaging in arbitrary prosecution, issuing erroneous criminal warrants, and misidentifying criminal suspects by failing to properly train, supervise or discipline their investigators and corrections officers.  Section 1983 imposes liability on any person who, under color of state law, deprives another of any rights secured by the Constitution or the laws of the United States.  42 U.S.C. § 1983.

In moving to partially dismiss Count One, the movants argue that to the extent it is based upon the filing or initiating of criminal charges, defendant Zappala, as the District Attorney for Allegheny County, is absolutely immune from liability.  In determining whether a prosecutor is entitled to absolute immunity, the law is clear:

> [A]cts undertaken by a prosecutor in preparing for the
> initiation of judicial proceedings or for trial, and which
> occur in the course of his role as an advocate for the State,
> are entitled to the protections of absolute immunity.

Kalina v. Fletcher, 118 S.Ct. 502, 507 (1997), quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  However, when a prosecutor engages in activities which are distinct from his role as

---

1.  The other named defendants filed an answer and affirmative defenses to the complaint.

an advocate, absolute immunity is not available.  Id.

Hence, "prosecutors are subject to varying levels of official immunity, and absolute prosecutorial immunity attaches only to actions performed in a 'quasi-judicial role', such as participation in court proceedings and other conduct intimately associated with the judicial phases of litigation."  Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999), citing Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994).  Thus, prosecutors are absolutely immune from suit under § 1983 for initiating and pursuing a criminal prosecution.  Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).

However, "a prosecutor is not absolutely immunized for advice given to police during the investigative stages of a criminal proceeding."  Carter, 181 F.3d at 356 n.58.  Rather, "a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity."  Id. at 356.  That is because a prosecutor's directory role in police investigations is not sufficiently related to his advocate function.  Id. at 356 n.58, citing Burns v. Reed, 500 U.S. 478, 495 (1991).  In a similar vein, a prosecutor's administrative decisions, including the employment or supervision of personnel, are not subject to absolute prosecutorial immunity.  McLaughlin v. Watson, 271 F.3d 566, 568 (3d Cir. 2001).

Based on the foregoing, to the extent Count One is based upon the filing or initiating of criminal charges, defendant Zappala is absolutely immune from liability.  However, Count One also pertains to conduct which is outside a prosecutor's role as an advocate for the State, as the defendants, including Zappala, are said to have failed to train or supervise their personnel, which resulted in the misidentification and false arrest of Mr. Miller.  Clearly, defendant Zappala is not entitled to absolute immunity for these complained-of acts.  Accepting

the allegations in the amended complaint as true, Zappala is also not entitled to qualified

immunity for such acts, and the movants do not argue otherwise.

In Count Three, Mr. Miller contends that all of the individual defendants entered

into an agreement to arrest him without probable cause and deprive him of his liberty and equal

protection rights and engaged in a conspiracy to generate media attention for their acts in violation

of 42 U.S.C. §§ 1983 and 1985(3). The moving defendants argue that Count Three should be

dismissed to the extent it arises under 42 U.S.C. § 1985(3), as there is no allegation their alleged

conspiracy was motivated by a class-based, invidiously discriminatory animus. We agree.

Under § 1985(3), an action may be brought by a person injured by a conspiracy

formed "for the purpose of depriving, either directly or indirectly, any person or class of persons

of the equal protection of the laws, or of equal privileges and immunities under the laws." 42

U.S.C. § 1985(3). It is well settled that "because § 1985(3) requires the 'intent to deprive of

*equal* protection, or *equal* privileges and immunities,' a claimant must allege 'some racial, *or*

*perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators'

action' in order to state a claim." Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006)

(emphasis in original), quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

Thus, to state a viable claim under 42 U.S.C. § 1985(3), a plaintiff must allege:

(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to

deprive any person or class of persons to the equal protection of the laws; (3) an act in furtherance

of the conspiracy; and (4) an injury to person, property, or the deprivation of any right. Lake v.

Arnold, 112 F.3d 682, 685 (3d Cir. 1997). Our Court of Appeals has explained: "a plaintiff must

allege both that the conspiracy was motivated by discriminatory animus against an identifiable

class and that the discrimination against the identifiable class was invidious."  Farber, supra, 440

F.3d at 135 (citation omitted).

Here, the plaintiffs have failed to plead the requisites of a § 1985(3) conspiracy, as

the amended complaint is devoid of allegations that the defendants' alleged conspiracy was

motivated by a class-based, invidiously discriminatory animus.  Thus, that portion of Count Three

which is said to arise under 42 U.S.C. § 1985(3) is dismissed.

In Count Four, the individual defendants are said to have violated 42 U.S.C.

§ 1986 by failing to prevent the alleged § 1985(3) conspiracy.  This claim must fail.

Section 1986 provides in pertinent part:

> Every person who, having knowledge that any of the
> wrongs conspired to be done, and mentioned in section
> 1985 of this title, are about to be committed, and having
> power to prevent or aid in preventing the commission of
> the same, neglects or refuses so to do, if such wrongful act
> be committed, shall be liable to the party injured...

42 U.S.C. § 1986.  In order to adequately state a claim under § 1986, a plaintiff must show the

existence of a § 1985 conspiracy.  Clark v. Clabaugh, 20 F.3d 1290, 1295 n. 5 (3d Cir 1994);

Atamian v. Ellis, 2001 WL 699016, *3 (D.Del., June 19, 2001), aff'd, 35 Fed.Appx. 356 (3d Cir.

2002) [table].  Absent the elements of a § 1985 conspiracy, a § 1986 claim is properly dismissed.

Id.  Here, since the amended complaint fails to properly plead the existence of a § 1985(3)

conspiracy, the § 1986 claim in Count Four cannot lie.

In Counts Seven and Twelve, plaintiffs Mr. Miller and Erica Miller respectively

assert causes of action for intentional infliction of emotional distress.  In his claim, Mr. Miller

alleges that the defendants acted in an extreme and outrageous manner in purposefully depriving

him of his liberty interests, instituting criminal proceedings against him, issuing inflammatory

statements to the press and moving for an order to have him fingerprinted (Count Seven).  In her

claim, Erica Miller contends that by depriving her father of his liberty interests and making

groundless accusations against him in her presence, the defendants acted in an extreme and

outrageous manner (Count Twelve).

   In moving to dismiss the claims of intentional infliction of emotional distress set

forth in Counts Seven and Twelve, the movants argue that the plaintiffs have not alleged facts that

are so outrageous or extreme as to state a viable claim.  We agree.

   Section 46(1) of the Restatement (Second) of Torts defines intentional infliction

of emotional distress as:

> One who by extreme and outrageous conduct intentionally
> or recklessly causes severe emotional distress to another
> is subject to liability for such emotional distress, and if
> bodily harm to the other results from it, for such bodily harm.

Liability under this section has been found only where the conduct has been

> so outrageous in character, so extreme in degree, as to go
> beyond all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized society.

Kazatsky v. King David Memorial Park, 527 A.2d 988, 994 (Pa. 1987).

   To state such a claim, "the conduct must be so extreme that it offends the very

moral values of our society."  Williams v. Fedor, 69 F.Supp.2d 649, 668 (M.D.Pa. 1999), aff'd.,

211 F.3d 1263 (3d Cir. 2000).  "[O]nly the most egregious conduct" will sustain such a claim.

Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998).  "Overreaching, but not abusive, tactics used in

the course of everyday living will not support a claim for intentional infliction of emotional

distress."  Bradshaw v. General Motors Corp., 805 F.2d. 110, 114 (3d Cir. 1986).

Here, case law indicates that the defendants' complained-of acts are not so outrageous in character, nor so extreme in degree, as to support a claim for intentional infliction of emotional distress.  For instance, in Atkinson v. City of Philadelphia, 2000 WL 793193, *1, *6 (E.D.Pa., June 20, 2000), aff'd., 281 F.3d 218 (3d Cir. 2001) [table], claims that a police detective submitted a false affidavit of probable cause to obtain an arrest warrant for a plaintiff, after which police forced their way into the plaintiff's home while searching to arrest him, and in the process, terrified his children did not rise to the level of atrocity needed to sustain a claim for intentional infliction of emotional distress.  Likewise, in Gilbert v. Feld, 842 F.Supp. 803, 821 (E.D.Pa. 1993), claims that a county detective instituted the plaintiff's arrest without probable cause, arrested him in front of his grandmother, placed him in handcuffs and made him walk five or six blocks, transferred him to another jail without instructions to do so, detained him for several hours before his arraignment, persuaded him to waive his arraignment in Philadelphia until he was transferred to Montgomery County, re-arrested him without probable cause, and signed an affidavit of probable cause despite knowing it was false were held not to be so outrageous as to constitute a claim for intentional infliction of emotional distress.  In Sieger v. Township of Tinicum, 1991 WL 197315, *5 (E.D.Pa., Sept. 30, 1991), claims that a township executive official knowingly issued a series of citations without probable cause and testified falsely at a hearing on the citations were deemed not to rise to the requisite level of outrageousness.

Based on our review of the plaintiffs' claims in Counts Seven and Twelve, we find the defendants' complained-of acts are not so outrageous or egregious in nature as to support a claim for intentional infliction of emotional distress.   An appropriate Order will entered.

11

O   R   D   E   R


AND NOW, this 15th day of May, 2006, for the reasons set forth in the

Court's Opinion and Order,

IT IS ORDERED that the partial motion to dismiss filed by defendants Zappala,

Horton and Laquatra (Docket No. 28) is granted.


s/ ROBERT C. MITCHELL
United States Magistrate Judge