IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES KEVIN MILLER, SR., and | ) | |
| SANDRA L. MILLER, his wife; and ERICA | ) | |
| MILLER; | ) | |
|                 Plaintiffs, | ) | |
| | ) | |
|            vs | ) | Civil Action No. 05-733 |
| | ) | |
| COUNTY OF ALLEGHENY, a Pennsylvania | ) | |
| Municipality; THOMAS HORTON, | ) | |
| individually and in his capacity as a Detective | ) | |
| for the Allegheny District Attorney's Office; | ) | |
| FRANCES LAQUATRA, individually and in | ) | |
| her capacity as an investigator for the District | ) | |
| Attorney's Office of Corrections; THOMAS | ) | |
| LEICHT, individually and in his capacity as an | ) | |
| Officer/Employee for the Allegheny County Jail; | ) | |
| RONALD POFI, individually and in his capacity | ) | |
| as an Officer/Employee for the Allegheny | ) | |
| County Jail; RAMON C. RUSTON, individually | ) | |
| and in his capacity as Warden of the Allegheny | ) | |
| County Jail; DANIEL ONORATO, individually | ) | |
| and in his capacity as Chief Executive Officer of | ) | |
| Allegheny County; STEPHEN A. ZAPPALA, | ) | |
| individually and in his capacity as District | ) | |
| Attorney for Allegheny County, | ) | |
|                 Defendants. | ) | |

## OPINION  AND  ORDER

MITCHELL, Magistrate Judge:

        Presently before the Court are the defendants' motions for summary judgment on

all claims brought against them, as well as the plaintiffs' motion for partial summary judgment

on whether defendants Leicht, Pofi, Horton and Laquatra had probable cause to arrest plaintiff

Charles Kevin Miller.  For reasons discussed below, the plaintiffs' motion for partial summary

judgment (Document No. 49) is denied, the motion for summary judgment filed by defendants

Stephen A. Zappala, Thomas Horton and Frances Laquatra (Document No. 50) is granted, and the

motion for summary judgment filed by defendants Allegheny County, Thomas Leicht, Ronald

Pofi, Ramon Ruston and Daniel Onorato (Document No. 53) is granted.

The plaintiffs, Charles Kevin Miller, Sr., his wife, Sandra L. Miller, and their

daughter, Erica Miller, have filed an amended civil rights complaint against defendants Allegheny

County, PA, its Chief Executive Daniel Onorato, its District Attorney Stephen Zappala, Thomas

Horton and Frances Laquatra, who are employees of the District Attorney's Office, Ramon

Ruston, the Warden of the Allegheny County Jail ("ACJ"), and Thomas Leicht and Ronald Pofi,

who are employees of the Allegheny County Bureau of Corrections.  This action arises from the

alleged illegal arrest and detention of plaintiff Charles Kevin Miller on February 18, 2004 based

on a case of mistaken identity.

Charles Kevin Miller ("C. Kevin Miller") was employed as a corrections officer at

ACJ from 2001 until 2004.  A nonparty to this suit, Charles Richard Miller ("C. Richard Miller"),

also was employed as a corrections officer at ACJ from 1994 until he was discharged in 2002 for

fraternizing with female inmates.

The record shows as follows: in June 2003, defendants Laquatra, Horton and

Leicht began investigating allegations of sexual abuse against several corrections officers at ACJ.

On February 13, 2004, defendant Laquatra interviewed Monica Burbidge, a former ACJ inmate,

by telephone.  During that interview, Burbidge told Laquatra she was incarcerated in ACJ during

July, August and September 2003, during which time Corrections Officer Charles Miller called

her out of her cell on two or three occasions, and they would meet in a closet, where they would

2

kiss, and he felt her breasts.  Prior to this interview, Monica Burbidge had been a confidential informant for the District Attorney's Office, and her information had always proven reliable.

When Laquatra interviewed Burbidge on February 13, 2004, Burbidge was in a drug rehabilitation facility.  Laquatra had met Burbidge on several occasions, and had spoken to her by telephone about unrelated matters prior to interviewing her by telephone on February 13, 2004.  During some of their prior conversations, Laquatra realized Burbidge was under the influence of a controlled substance, and on other occasions she knew Burbidge was not.  On February 13, 2004, when Laquatra interviewed Burbidge by telephone, Laquatra avers Burbidge seemed sober and lucid.

Laquatra informed defendants Horton and Leicht of Burbidge's accusations against Charles Miller.  Leicht read the notes of Laquatra's interview with Burbidge, and based on Burbidge's accusations, Leicht called defendant Pofi to ascertain if a corrections officer named Charles Miller worked at ACJ in July, August and September of 2003.  Pofi checked the roster of corrections officers at ACJ and confirmed that a Charles Miller was employed there at such times. C. Kevin Miller was the only Charles Miller employed at ACJ from July through September 2003.  Thus, Pofi provided Leight with C. Kevin Miller's full name, address, and other data.

Leicht, Laquatra and Horton then executed an Affidavit for Issuance of Process (hereinafter, the "Probable Cause Affidavit"), as well as a police criminal complaint against C. Kevin Miller, charging him with institutional sexual assault.  The Probable Cause Affidavit referred to Ms. Burbidge as "Victim 'U'", and it provided in pertinent part:

> During an interview conducted with Victim "U", Victim "U"
> stated that the actor had indecent contact by touching the
> sexual or intimate parts of her body, while she was in [ACJ]
> in 2003.

On February 17, 2004, a district justice issued a warrant for the arrest of C. Kevin Miller.  On the morning of February 18, 2004, Bruce Helt, a corrections officer at ACJ, spoke with defendant Pofi about the arrests of ACJ officers for alleged sexual assault within the prison. Helt asked Pofi whether Charles Miller was going to be arrested, and Pofi informed him that C. Kevin Miller was to be arrested later that day for sexual misconduct.  Helt asked Pofi if he was certain that C. Kevin Miller was the proper target of the investigation, as he knew C. Richard Miller had been fired for allegations of sexual misconduct in 2002.

Indeed, in the fall of 2002, defendant Pofi interviewed C. Richard Miller for alleged sexual improprieties at ACJ, and during the interview, C. Richard Miller admitted giving his home phone number to Monica Burbidge, a female inmate on his pod.  When records showed that numerous phone calls were made from ACJ to the home phone number of C. Richard Miller, a disciplinary hearing was scheduled for nonparty Miller for violating ACJ's administrative directive against fraternization, after which C. Richard Miller was discharged.  Significantly however, when Leicht conversed with Pofi on or about February 13, 2004 and asked him to verify ACJ records, Leicht never mentioned to Pofi that Monica Burbidge was the victim of sexual assault in this instance.  Thus, Pofi informed Helt that C. Kevin Miller was to be arrested later that day for alleged sexual misconduct at the prison.

On February 18, 2004, defendants Horton and Leicht went to C. Kevin Miller's residence to effectuate the warrant.  They knocked on the door, and Mr. Miller let them inside, at which point they informed him he was being arrested.  Mr. Miller told his daughter he was being arrested, and then he walked outside with Horton and Leicht to an unmarked vehicle.  Mr. Miller was not handcuffed until he was inside the vehicle.  As he was driven to the District Attorney's

Office, C. Kevin Miller professed his innocence, informing Horton and Leicht they were mistaking him for C. Richard Miller, who formerly worked at ACJ.

Shortly after arriving at investigative offices, Leicht contacted Pofi about Mr. Miller's claims, and they came to realize that C. Richard Miller may have been responsible for the alleged sexual assaults at issue. Defendants Leicht and Horton took C. Kevin Miller to the office of the presiding magistrate, where Horton requested that Miller be released on his own recognizance. The charge against C. Kevin Miller was subsequently withdrawn.

On February 19, 2004, the Pittsburgh Post Gazette and Pittsburgh Tribune-Review published stories that C. Kevin Miller was one of the guards at ACJ charged with institutional sexual assault. On February 25, 2004, police issued a criminal complaint against nonparty C. Richard Miller for institutional sexual assault in incidents occurring from July to September 2002 (not 2003, as Ms. Burbidge had claimed).

Based on the defendants' complained-of acts, the plaintiffs filed a twelve-count amended complaint. In Count One, Mr. Miller asserts a claim against all the defendants for violating his rights under 42 U.S.C. § 1983 by allowing, or being deliberately indifferent to such unlawful police practices as illegal seizures and imprisonment, misidentification of criminal suspects, and issuing erroneous warrants. In Count Two, Mr. Miller asserts a claim against defendants Ruston, Horton, Laquatra, Leicht and Pofi for arresting him without probable cause in violation of § 1983. In Count Three, Mr. Miller claims that all the individual defendants entered into an agreement to arrest him without probable cause, deprive him of his liberty and equal protection rights, and conspired amongst themselves to generate media attention for their acts in violation of 42 U.S.C. §§ 1983 and 1985(3). In Count Four, Mr. Miller contends that the

individual defendants violated 42 U.S.C. § 1986 by refusing or neglecting to aid in preventing the aforesaid conspiracy.  In Count Five, Mr. Miller claims that defendants Ruston, Horton, Laquatra, Leicht and Pofi are liable for false arrest and false imprisonment.  In Counts Six and Seven, Mr. Miller asserts that defendants Onorato, Ruston, Horton, Laquatra, Leicht and Pofi engaged in state law malicious prosecution (Count Six) and are liable for intentional infliction of emotional distress (Count Seven).  In Count Eight, Mr. Miller contends that defendants Ruston, Horton, Laquatra, Leicht and Pofi defamed him by issuing a warrant application for a serious criminal charge with reckless disregard for the truth or falsity of the statements contained therein.  In Count Nine, defendant Pofi is said to have slandered Mr. Miller by stating to Officer Helt that Miller was rightfully charged with sexual assault.  In Count Ten, Mr. Miller claims that defendants Onorato, Ruston, Horton, Laquatra, Leicht and Pofi engaged in a conspiracy to arrest him without probable cause and generate media attention for their acts.  In Count Eleven, plaintiff Sandra Miller asserts a claim for loss of consortium.  In Count Twelve, plaintiff Erica Miller contends that defendants Ruston, Horton, Laquatra, Leicht and Pofi are liable for intentional infliction of emotional distress for purposefully depriving her father of his liberty interests and making shocking accusations against him in her presence.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

        In an Opinion and Order dated May 15, 2006, the Court granted a motion to dismiss several counts of the amended complaint submitted by defendants Zappala, Horton and Laquatra.  Specifically, the Court granted the partial dismissal of Count One to the extent it was based on defendant Zappala's filing or initiating criminal charges, the partial dismissal of Count Three which arose under 42 U.S.C. § 1985(3), and the dismissal of Counts Four, Seven and

Twelve in their entirety.

Discovery has closed, and the defendants move for summary judgment on all claims asserted against them, while the plaintiffs move for partial summary judgment on whether defendants Leicht, Pofi, Horton and Laquatra had probable cause to arrest C. Kevin Miller. Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movants are entitled to judgment as a matter of law.  F.R.Civ.P. 56(c); <u>Biener v. Calio</u>, 361 F.3d 206, 210 (3d Cir. 2004).

<u>Plaintiffs' motion for partial summary judgment</u>:

The plaintiffs argue that defendants Leicht, Horton and Laquatra lacked probable cause to arrest C. Kevin Miller, as they undertook no independent investigation to corroborate the information given to them by Monica Burbidge.  Having failed to corroborate the information provided by Burbidge, the plaintiffs insist such information was insufficient as a matter of law to support a finding that probable cause existed to arrest C. Kevin Miller.  As to their claim against defendant Pofi, the plaintiffs insist he was aware that the allegations made by Monica Burbidge were directed against non-party C. Richard Miller, yet Pofi made no attempt to alert investigators to such fact, and hence, he was complicit in the arrest without probable cause of C. Kevin Miller.

The Fourth Amendment prohibits an officer from arresting a citizen except upon probable cause.  <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482 (3d Cir. 1995).  "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'"  <u>Sharrar v. Felsing</u>, 128 F.3d 810, 817-18 (3d Cir. 1997), quoting <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975).

While "[p]robable cause to arrest requires more than mere suspicion... it does not

require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."
Orsatti, supra, 71 F.3d at 482-83.  Rather, "[p]robable cause exists if there is a fair probability that
the person committed the crime at issue."  Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000).  "If
'at the moment the arrest was made ... the facts and circumstances within [the defendant's]
knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a
prudent man in believing' that the plaintiff had violated the law, probable cause is present."
Merkle v. Upper Dublin School Dist., 211 F.3d 782, 789 (3d Cir. 2000), quoting Hunter v.
Bryant, 502 U.S. 224, 228 (1991).

      The Third Circuit Court of Appeals has held that an officer has probable cause to
arrest a suspect based on a credible report from an eyewitness, or a credible statement from a
victim of the crime.  See, Merkle, supra, 211 F.3d at 790 (finding that officer had probable cause
to arrest a teacher for theft by taking based on a credible report from the school principal who
witnessed the alleged crime); also see, Mitchell v. Obenski, 134 Fed.Appx. 548, 551 (3d Cir.
2005) (officer had probable cause to arrest a suspect for sexual assault based on the victim's
credible account of the sexual assault which was supported by hotel records); Pardue v. Gray, 136
Fed.Appx. 529, 533 (3d Cir. 2005) (officer had probable cause to arrest a suspect on charges of
harassment and stalking based on the victim's credible report of being stalked and harassed);
Feldman v. Community College of Allegheny, 85 Fed.Appx. 821, 825 (3d Cir. 2004) (officer had
probable cause to arrest a suspect for engaging in defiant trespass based on the statement of a
security guard that he instructed the suspect to leave the premises, but he refused to leave).

      In the above cases, the plaintiffs argued, as here, that probable cause to arrest did
not exist, as the officers failed to conduct an independent investigation to corroborate the

allegations of misconduct.  Clearly however, an officer "[is] not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." Merkle, 211 F.3d at 790, n. 8; accord, Pardue, 136 Fed.Appx. at 533, and Feldman, 85 Fed.Appx. at 825, citing Merkle.  "[T]he mere fact that a police investigation could have been more thorough does not vitiate probable cause." Obenski, supra, 134 Fed.Appx. at 551.

In this case, Monica Burbidge, a former inmate at ACJ, reported to defendant Laquatra that she was the victim of several sexual assaults at ACJ by jail guard Charles Miller during July, August and September 2003.  Prior to this interview, Burbidge had been a confidential informant for the District Attorney's Office, and her information had always proven reliable.  Laquatra apprised defendants Horton and Leicht of Burbidge's statements, after which Leicht had defendant Pofi check records at ACJ to ascertain if a Charles Miller was working there during July, August and September 2003.  When Pofi learned that one Charles Miller worked at ACJ during the time period claimed by Ms. Burbidge, i.e., C. Kevin Miller, Pofi so informed Leicht.  Leicht, together with Horton and Laquatra, then executed the Probable Cause Affidavit and criminal complaint against plaintiff Miller, whereupon a district justice issued a warrant for Miller's arrest.

Significantly, Ms. Burbidge was not acting solely in the capacity of an informant when she reported to Laquatra; rather, Burbidge was the victim of the purported sexual assaults at ACJ.  In differentiating between informers and victims, our Court of Appeals has explained: "the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, is appropriately relaxed if the informant is an identified victim".  Sharrar, supra, 128 F.3d at 818.

9

Here, based on the credible report of Ms. Burbidge, a victim of sexual assault at ACJ, plus ACJ records which confirmed that a Charles Miller worked at ACJ during the time period claimed by Burbidge, the defendants had probable cause to arrest C. Kevin Miller.  Thus, the plaintiffs' motion for partial summary judgment is denied.[1]

Defendants' Zappala, Horton and Laquatra's motion for summary judgment:

Defendants Zappala, Horton and Laquatra move for summary judgment on all remaining claims brought against them.  The plaintiffs concede that defendant Zappala has no supervisory liability in this case.  With respect to Mr. Miller's civil rights claims in Counts One, Two and Three, the defendants argue they are entitled to summary judgment on the claims of arrest without probable cause and deprivation of liberty, as there was probable cause to arrest Mr. Miller.  In the alternative, the defendants assert they are entitled to qualified immunity.

---

1.    Having found that there was probable cause to arrest C. Kevin Miller, we do not engage in a detailed discussion of qualified immunity.  However, even assuming, arguendo, that probable cause to arrest did not exist in this matter, the defendants would be entitled to qualified immunity on Mr. Miller's claim of unlawful arrest.  Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800 (1982).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991).  Qualified immunity is available if "reasonable officials in their position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful."  Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82, 87 (3d Cir. 1998).  As discussed above, it was objectively reasonable for defendants Laquatra, Horton, Leicht and Pofi to conclude that there was probable cause to arrest Mr. Miller based on the credible statements of the victim, Monica Burbidge, who had always proven to be a reliable confidential informant in other matters, as well as ACJ records which verified that a Charles Miller worked at ACJ during the time period claimed by Burbidge.  "Only where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable' will the officer lose the shield of immunity."  Mitchell, 134 Fed. Appx. at 551, quoting Orsatti, supra, 71 F.3d at 483.  Certainly in this case, it would not have been clear to a reasonable officer that probable cause to arrest Mr. Miller was lacking.

"Generally, the question of probable cause in a section 1983 damage suit is one for the jury, ... particularly ... where the probable cause determination rests on credibility conflicts." <u>Merkle</u>, 211 F.3d at 788.  "However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding". <u>Id.</u> at 788-89.

As discussed above, defendants Horton and Leicht had probable cause to arrest Mr. Miller based on Monica Burbidge's credible report of sexual misconduct against her by jail guard Charles Miller during July, August and September 2003, and ACJ records which confirmed that a Charles Miller worked there at such time.  Since a district justice signed the arrest warrant at issue, the defendants are entitled "to a presumption of reasonableness that can only be overcome by 'allegations of deliberate falsehood or of reckless disregard for the truth', which must be accompanied by specific proof." <u>Obenski</u>, 134 Fed. Appx. at 551, quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978).  Here, no evidence shows that Horton or Leicht made deliberate falsehoods or acted in reckless disregard for the truth in applying for the arrest warrant.

Since Mr. Miller was arrested pursuant to a facially valid warrant, there is no merit to his claim that he was deprived of his constitutional liberty interests in this matter.  The United States Supreme Court has counseled:

> [M]ere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.'  But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

<u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979).

Here, from the time Mr. Miller professed his innocence to Leicht and Horton until

11

the time he was taken to the magistrate's office and released, Mr. Miller was in custody for approximately 90 to 120 minutes.  He was never placed in a jail cell.  Based on the ruling in Baker, supra, Mr. Miller was not deprived of his constitutional liberty interests.

With respect to Mr. Miller's § 1983 conspiracy claim against these defendants for false arrest and deprivation of liberty in Count III, the plaintiffs have not met their burden of showing that these defendants entered into an agreement to deprive him of his constitutional rights under color of state law.  See, Pardue, supra, 136 Fed.Appx. at 533.  Thus, defendants Zappala, Horton and Laquatra are entitled to summary judgment on Counts One, Two and Three.

Due to our finding that defendants Horton and Leicht had probable cause to arrest Mr. Miller, his supplemental claims for false arrest and false imprisonment in Count V and for malicious prosecution in Count VI cannot stand.  Under Pennsylvania law, the elements of a false imprisonment claim are "(1) the detention of another person, and (2) the unlawfulness of such detention."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  In Renk, the Pennsylvania Supreme Court opined that "[a]n arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not."  Id.  Since the defendants had probable cause to arrest Mr. Miller, summary judgment on Count V is proper.

Likewise, Mr. Miller's state law claim for malicious prosecution in Count VI must fail.  "A showing of probable cause to institute proceedings against a plaintiff establishes an absolute defense against an action for malicious prosecution, which renders immaterial the issue of whether the prosecutor's motive is malicious."  Broadwater v. Sentner, 725 A.2d 779 (Pa.Super. 1999), appeal denied, 753 A.2d 814 (Pa. 2000).

As noted above, Counts Four, Seven and Twelve were dismissed against these

defendants by Opinion and Order dated May 15, 2006.  In Count Eight, Mr. Miller purports to set

forth a claim for defamation based on issuance of the warrant application in this case, which he

claims was made with reckless disregard for the truth or falsity of statements contained therein.

"Pennsylvania law provides absolute immunity for statements made in the course of, or pertinent

to, any stage of judicial proceedings."  Nudelman v. Borough of Dickson City Police Dept., 2006

WL 952393, *4 (M.D.Pa., Apr. 12, 2006), citing Lohman v. Township of Oxford, 816 F.Supp.

1025, 1030-31 (E.D.Pa. 1993).  In Lohman, the Court explained that "parties are absolutely

immune from liability for defamation for statements made in the course of, or pertinent to, any

stage of judicial proceedings.... Where an individual swears out a criminal complaint against

another, the allegations in the complaint are absolutely privileged."  816 F.Supp. at 1030.  Thus,

summary judgment is proper on Count Eight.

   In Count Ten, Mr. Miller claims that defendants Horton and Laquatra, together

with defendants Onorato, Ruston, Leicht and Pofi, engaged in a civil conspiracy to arrest him

without probable cause and generate media attention for their acts.  This claim lacks merit, as

Horton and Laquatra had probable cause to arrest Mr. Miller, and the plaintiffs have not shown

that the defendants entered into an agreement to unlawfully generate media attention for their acts.

Clearly, "[a] cause of action for civil conspiracy requires a separate underlying tort as a predicate

for liability."  Pardue, 136 Fed.Appx. at 533.

   Based on the foregoing, we will dismiss Mrs. Miller's loss of consortium claim

against these defendants in Count XI which is derived from her husband's alleged injuries.

District courts in this circuit have held that "[u]nder Pennsylvania law, a spouse's right to recover

for loss of consortium derives only from the other spouses right to recover in tort."  Danas v.

Chapman Ford Sales, 120 F.Supp.2d 478, 489 (E.D.Pa. 2000), citing Murray v. Commercial

Union Ins. Co., 782 F.2d 432, 438 (3d Cir. 1986).  Further, "[n]o authority suggests that civil

rights violations can support loss of consortium claims."  Danas, 120 F.Supp.2d at 489, citing

Stauffer v. City of Easton, 1999 WL 554602, *1 (E.D.Pa. 1999).  Therefore, the motion for

summary judgment filed by defendants Zappala, Horton and Laquatra is granted.

Defendants' Allegheny County, Onorato, Leicht, Pofi, and Ruston's motion for summary
judgment:

Defendants Allegheny County, Onorato, Leicht, Pofi and Ruston move for

summary judgment on all claims asserted against them.  In response to their motion, the plaintiffs

consent to the dismissal of defendants Onorato and Ruston from this case.  The plaintiffs also

concede that Allegheny County is not liable for municipal liability in Count One.  Further,

pursuant to the Court's Opinion and Order dated May 15, 2006, Count Three is dismissed to the

extent it arises under 42 U.S.C. § 1985(3), and Counts Four, Seven and Twelve are dismissed in

their entirety.

With respect to the § 1983 claims against Leicht and Pofi in Counts One, Two and

Three, we find they are entitled to summary judgment for reasons discussed above.  That is,

Leicht had probable cause to arrest Mr. Miller, and no evidence shows that he made deliberate

falsehoods or acted in reckless disregard for the truth in applying for the arrest warrant.

As for defendant Pofi, his only involvement in the plaintiff's arrest was to check

ACJ records to verify that a Charles Miller worked there during July through September 2003,

and to provide Leicht with Mr. Miller's name, address and other relevant data.  In such instance,

where an officer merely provides information and neither participates in the arrest, nor directs

others to effectuate the arrest, he cannot be liable for false arrest.  Cox v. Hackett, 2006 WL

2129060, *5 (E.D.Pa., July 27, 2006).  Since Mr. Miller was not deprived of his constitutional

liberty interests in this case, and as the record fails to show that the defendants entered into an

agreement to deprive him of his constitutional rights under color of state law, the defendants are

entitled to summary judgment on Counts One, Two and Three.

Summary judgment is also appropriate for these defendants on Counts Five (false

arrest and false imprisonment), Six (malicious prosecution), Eight (defamation), Nine (slander)

and Ten (civil conspiracy) by virtue of the Pennsylvania Political Subdivision Tort Claims Act, 42

Pa.C.S.A. § 8541 et seq. ("Tort Claims Act"), and for reasons discussed above.  The Tort Claims

Act, with certain exceptions not applicable here, grants immunity to local agencies and their

employees for personal injury and property damage caused by their conduct.  42 Pa.C.S. § 8541.[2]

Under the Tort Claims Act, employees of a local agency acting within the scope of

their duties are immune from the plaintiffs' state law claims unless they engaged in conduct that is

found to constitute a "crime, actual fraud or willful misconduct".  See, <u>Maloney v. City of

Reading</u>, 2006 WL 305440, *5-*6 (E.D.Pa., Feb. 8, 2006), <u>aff'd.</u>, 2006 WL 2986460 (3d Cir.,

Oct. 19, 2006), citing 42 Pa.C.S. § 8550.  No evidence shows that defendants Leicht and Pofi

engaged in acts that constitute a crime or actual fraud.  Further, an officer's conduct will only

constitute "willful misconduct" if he committed "misconduct which the perpetrator recognized as

misconduct and which was carried out with the intention of achieving exactly that wrongful

_____

2.   Exceptions to immunity under the Tort Claims Act involve acts falling within the
following categories: (1) vehicle liability, (2) the care, custody or control of personal property of
others, (3) the care, custody or control of real property in the possession of the local agency, (4)
trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks,
and (8) the care, custody or control of animals.  42 Pa.C.S.A. § 8542(b).  Clearly, the defendants'
complained-of acts do not fall within any of these exceptions to immunity.

purpose."  <u>Waldon v. Borough of Upper Darby</u>, 77 F.Supp.2d 655, 658-59 (E.D.Pa. 1999), citing

<u>Renk</u>, <u>supra</u>, 641 A.2d 289 (Pa. 1994).  Here, there is no evidence showing that Leicht or Pofi

wanted to arrest the wrong Charles Miller; rather, this was an unfortunate case of mistaken

identity.  Since Leicht and Pofi did not engage in "willful misconduct", they are immune from the

plaintiffs' state law claims pursuant to the Tort Claims Act.

    It follows that Mrs. Miller's loss of consortium claim against these defendants in

Count XI fails for reasons previously discussed.  Therefore, the motion for summary judgment

submitted by defendants Allegheny County, Onorato, Ruston, Leicht and Pofi is granted.

    An appropriate Order will be entered.

16

<u>O   R   D   E   R</u>

AND NOW, this 16th day of November, 2006, for the reasons set forth in the Court's Opinion and Order,

IT IS ORDERED that the plaintiffs' motion for partial summary judgment on whether defendants Leicht, Pofi, Horton and Laquatra had probable cause to arrest plaintiff Charles Kevin Miller (Document No. 49) is denied; that the motion for summary judgment filed by defendants Zappala, Horton and Laqutra (Document No. 50) is granted; and that the motion for summary judgment filed by defendants Allegheny County, Onorato, Ruston, Leicht and Pofi (Document No. 53) is granted.

IT IS FURTHER ORDERED that an appropriate Judgment Order will be entered against the plaintiffs and in favor of the defendants.

<u>s/ ROBERT C. MITCHELL</u>
United States Magistrate Judge

17